UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2023 NOV -6  AM 9: 41

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____ CL _____

**Carlos A. Leyva**

**Plaintiff,**

**v.**

Case No.: **1:23CV01348** DII

**JURY DEMANDED**

**Bascai, Inc.,  DOES 1-10.**

**Defendants**

_____/

## ORIGINAL COMPLAINT

Comes now Plaintiff Carlos A. Leyva ("Leyva" or "Plaintiff") with his

Complaint against Bascai, Inc. ("BAS" or "Defendant") and DOES (collectively

"Defendants" or "the Enterprise") and states as follows:

### INTRODUCTION

1.      This is an action for fraudulent misrepresentation under Texas Common

Law, unfair trade practices under the Texas Deceptive Practices Act ("DTPA"), Unfair

Trade Practices under the FTC Act Section 5 ("FTCA"), and extortion (*inter alia)* under

the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq.

("RICO") (collectively "Counts").

### PARTIES, JURISDICTION, AND VENUE

2.      Leyva is an individual and resident of the State of Texas whose principal

place of residence is 7744 Northcross Dr., Austin, TX 78757. Leyva is a licensed attorney

in the State of Florida with bar number 51017. He has practiced exclusively in Federal

Court in District Courts in Florida and across the country. Leyva is experienced using the CM/ECF system and has NextGen credentials that have been established since NextGen was first released. However, Leyva has decided to proceed *pro se* in this matter. His practice has almost exclusively focused on cyberlaw and is of no need of assistance in litigating this matter.

3.    Upon information and belief named Defendant BAS is a California Corporation with its principal place of business located at 9548 Las Tunas Dr., Temple City, California.[1] Other DOE defendants of the Enterprise will be added once their identities become known.

4.    Upon information and belief, at all times material hereto, the Enterprise operated through the acts of its shareholders, employees, agents, representatives, servants, and the like, acting within their course of employment, scope of duties, agency, and ownership. Specifically, the Enterprise used BAS' corporate entity as a front for a criminal cryptocurrency scam ("Scam") on multiple occasions.

5.    This Court has subject matter jurisdiction under Title 28, Section 1331 of the United States Code (28 U.S.C. § 1331) ("Federal Question"). This Court has subject matter jurisdiction of Leyva's Texas State claims pursuant to Title 28, Section 1332 of the United States Code (28 U.S.C. § 1332(a)) ("Diversity"), because Leyva and BAS are residents of different states and the amount in controversy exceeds $75,000.[2] This Court

---

[1] *See* Exhibit A, Defendant's Principal Place of residence. All exhibits in this Complaint are included herein and incorporated hereto by reference.
[2] *See* Exhibit B, Leyva Wire Transfers Amount in Controversy is $412,785.58.

also has subject matter jurisdiction of Leyva's pendant State Counts under 28 U.S. Code § 1367 ("Supplemental jurisdiction").

6.      This Court has specific personal jurisdiction over the BAS because it and the Enterprise have availed itself of this forum intentionally, with malice and forethought, targeting Leyva to inflict financial harm here. Further, the continuing acts of the Enterprise targeting this forum contribute to this Court's specific personal jurisdiction. Finally, this Court has specific personal jurisdiction over the Enterprise because its acts were committed within this forum.

7.      Venue is proper in this judicial district pursuant to 28 U.S.C 1332 (a) and (b) because BAS and the Enterprise are subject to specific personal jurisdiction in this judicial district.

## ALLEGATIONS

8.      Leyva met DOE1 (aka "Amy Li" or "Li") when the latter sent an SMS text message to Leyva's iPhone presumably having attempted to reach one of her clients of a high-end jewelry company that she owned named Arte Oro. Li indicated that she reached Leyva because she must have been off by a single.[3]

9.      Leyva's WhatsApp conversations with Li commenced on August 6, 2023, and lasted for a period of several months.[4] Li provided background information on Arte Oro[5] in our WhatsApp discussions and said discussions include the enumerated predicate

---

[3] *See* Exhibit C, Li's initial SMS text to Leyva.
[4] *See* Exhibit D, Commencement of WhatsApp Conversation with Li.
[5] *See* Exhibit U, Li Claims to the Daughter of Arte Oro's Founder.

acts for RICO, fraud, and the other Counts herein.[6] Leyva contacted Arte Oro (https://www.artoro.com.sg/[7]) once he recognized that Li, on behalf of the Enterprise[8], perpetrated the Scam described herein. Arte Oro operates out of Singapore and purportedly sells super high-end custom jewelry. They have failed to respond as to whether Li was an employee of theirs. Leyva has no idea as to their legitimacy.

10.    Leyva contacted the United States Secret Service's ("USSS") Houston bureau concerning the Enterprise's Scam and has been in regular contact with its agents. Leyva provided the USSS an overview of how the Enterprise's Scam unfolded.[9]

11.    Li's Facebook profile indicates that she works for the Enterprise (i.e., Defendant BAS) and makes no mention of Arte Oro whatsoever.[10] Once Leyva's conversation with Li broke down, he friended an "Amy Li" on Facebook thinking that she was perhaps a separate individual. Facebook's "Amy Li" accepted Leyva's friend request and once again ("Li") tried to induce Leyva into participating in a cryptocurrency scam.[11] Li's basically "outs" herself as being one and the same individual whom Leyva communicated with for a period of months on WhatsApp starting on August 6, 2023.[12] Upon information and belief, any reasonable person viewing Li's photos sent to Leyva via the WhatsApp session, commenced  on August 6, 2023, and comparing those photos form Li's Facebook profile would conclude that these individuals are one and the same person.[13]

---

[6] *See* Exhibit E, Li's RICO and Fraud Predicate Acts
[7] *See* Exhibit F, Communication with Arte Oro
[8] See Exhibit G, Leyva's Affidavit
[9] *See* Exhibit H, Communication with USSS
[10] *See* Exhibit I, Li's Facebook Profile Shows her as Shareholder of Enterprise.
[11] *See generally* Exhibit I.
[12] *Id.*
[13] See Exhibit K, Comparison of Li Photos.

Upon information and belief the Enterprise morphs from one scam to another.

      12.     On August 8, 2023, two days after first meeting Li, she begins to suggest that Leyva start trading in gold futures ("XAU/USD")[14] and that Leyva can simply follow her trades. Li suggests that Leyva use the Enterprise's fraudulent website ("Website") located at the-extopice.com.[15] This Website was subsequently taken down when Leyva notified Intercontinental Exchange, Inc. ("ICE"), the owner of the NYSE, and other exchanges around the world, including Singapore, that this Website was using ICE's brand and logo, and therefore presumably part of ICE's operations. Leyva filed a complaint against ICE in the Middle District of Florida, which was subsequently dismissed with prejudice after discovering that ICE had the Enterprise's Website removed. Leyva realized that the Enterprise was responsible for the illegal activity conducted on this Website and not ICE.[16]

      13.     Upon information and belief, the Website and its customer service team ("CS") comprised a sophisticated operation that tracked balances, trades, wire transfers, provided customer support, and otherwise appeared to be legitimate, especially because the Enterprise had stolen ICE's brand and logo.[17] It provided Leyva a different limited liability company LLC (or other entity name) each time he wanted to make a transfer to his Enterprise account ("Account'). Said LLCs were all shell companies with no way for a consumer to contact them directly; they all appeared to have been formed on or about the

---

[14] See Exhibit J, XAU/USD is not a Security Under RICO
[15] See Exhibit L, Li Begins to Suggest Trading in Gold Future Options.
[16] See Exhibit M, Leyva's Dismissal with Prejudice against ICE.
[17] See Exhibit N, Home Page of Enterprise's Website.

same date.[18] These wire transfers were to said LLCs and other entities at banks such as Chase, Wells, Fargo, and Bank of America ("BOA").[19]

14.    Upon information and belief, the Website was much too sophisticated to be run by a single individual, instead it had all the earmarking's of a Website run by the Enterprise, of which Li was allegedly just the salesperson and marketeer. Li's user identification ("UID") on the Website was allegedly 620511. The Enterprise linked Leyva's and Account and Li's alleged account to extort additional funds from Leyva after his first attempt at making a withdrawal from his Account. The predicate acts for RICO, fraud, and the other Counts enumerated herein are also enumerated in the CS transcript with Leyva.[20]

15.    Leyva had amassed over $1.6M USD in his ICE Account". The problems detailed herein arose when Leyva attempted to withdraw $450K ("Withdrawal") from said Account. At that time the Enterprise's customer service ("CS") informed Leyva that to withdraw that amount of money he would be forced to pay the Enterprise $335,844.80 USD ("First Margin/Deposit") to obtain his funds ("Funds").[21] Upon information and belief, this action by the Enterprise's CS was nothing more than an egregious example of unfair business practices and an attempt to extort additional funds from Leyva.

16.    The Enterprise, after review by their "audit department," indicated that the monies provided to meet the First Margin/Deposit (which cleared after the Enterprise received the additional $15K wire transfer from Leyva prior to the Enterprise's deadline

---

[18] *See* <u>Exhibit O</u>, Enterprise LLCs.
[19] *See generally* <u>Exhibit B</u>.
[20] See <u>Exhibit P</u>, Relevant Predicate Acts in CS transcript.
[21] *See* <u>Exhibit Q</u>, Enterprise's First Margin/Deposit Requirement.

expiring; in fact it was about $10K more than required), allegedly included crypto transfers via UID 625011's crypto account (i.e., Li's alleged account) constituted a "crowd funding scheme" as per their invalid Agreement.[22]

17.    The Enterprise then issued a second more onerous margin requirement based on the alleged "crowd funding scheme." This time the Enterprise indicated that they needed a Second Margin/Deposit for Leyva to obtain his funds which totaled $546,605.57 to be paid within a three-day deadline.[23] Upon information and belief, as alleged *supra*, these margin requirements constitute unfair business practices and extortion.

18.    Li made additional consistent requests to send more funds to the Enterprise over time to achieve more profitable returns. She made these requests via our WhatsApp chat sessions.[24] Upon information and belief, these continuous requests were made to increase the funds that the Enterprise could extort from Leyva.

19.    Upon information and belief, the Enterprise had been operating the trading site located at https://www.thexcoinice.com//p/m ("Trading Site") for well over one year, using ICE's branding and logo, until it was removed by ICE upon Leyva's notification to same.[25] Leyva was never forced to review, let alone click "I Agree" to CS' User Agreement ("Agreement") when creating his Enterprise account ("Account") or at any time after, upon login.[26] All that was required was creating a user identifier ("UID") and password for said Account. In fact, Leyva had to ask CS where this Agreement could be

---

[22] *See Id.*; *see also* fn 18.
[23] *See* <u>Exhibit R,</u> Second Margin Requirement; *see also* fn 18.
[24] *See generally* fn 10.
[25] *See generally* ¶13.
[26] *See* <u>Exhibit S</u>, Enterprise's Login Screen.

7

found several times before he could locate it.[27] The Enterprise's Agreement is located on its "Login Screen" conspicuously hidden in a small "blue bold" font at the bottom of the Login Screen.

20.    Upon information and belief, the inability to view the Enterprise's "I Agree" contract, let alone mutually consent to same, represents fraudulent misrepresentation and unfair business practices on its face.[28]

### Count I – Fraudulent Misrepresentation
### [Texas Common Law]

21.    Leyva incorporates by reference all the allegations set forth in ¶¶1-20 as if fully set forth herein.

22.    Here the Enterprise made a false statement of material fact when it indicated that Leyva should have been aware of an Agreement that he had never seen, let alone mutually assented to. The Enterprise also made a false statement regarding the margin deposits required to remove funds from Leyva's Account.

23.    The Enterprise was aware that these statements were false because as a matter of practice it does not present the Agreement to the consumer for review upon creating an account and does not allow the consumer to click "I Agree" to mutually assent to the Agreement. Li also made a series of false statements regarding her employer, whether her account was also "frozen" by the Enterprise, her real identity, and other such statements as alleged herein.

24.    The Enterprise encouraged a consumer to act without knowledge of said

---

[27] *See* <u>Exhibit T</u>, Location of Enterprise's User Agreement.
[28] *See* <u>Exhibit G</u>, Leyva's Affidavit.

Agreement to levy oppressive, arbitrary, capricious and extortionary fines upon a consumer's attempt to withdraw funds.

25.    Leyva relied on not having read the Agreement and therefore had no knowledge that punitive fines would be imposed when he attempted to withdraw funds; fines in the amount of over half a million dollars of additional liquidity that Leyva had to provide the Enterprise in order to make his Withdrawal, an act that was severely detrimental to Leyva's interest because he lacked the required liquidity to meet the Enterprise's demand. Leyva lost funds as part of the Enterprise's false statements totaling over four hundred thousand dollars ($400,000.00) as alleged herein.

### Count II – Texas Deceptive and Unfair Trade Practices Act ("DTPA")
[Texas TITLE 2. Competition add Trade Practices Chapter 17]

26.    Leyva incorporates by reference all the allegations set forth in ¶¶1-20 as if fully set forth herein.

27.    Here Leyva was a consumer as defined under the DTPA.

28.    The Enterprise committed one or more unconscionable acts, including levying fines on multiple occasions wherein Leyva was never presented the Enterprise's User Agreement that said fines were purportedly based upon. These fines are prohibited by U.S. and the Enterprise was made aware of same through Leyva's Enterprise's CS texts with same.

29.    The Enterprise's failed to disclose that payments of "margins" were required before Leyva could withdraw funds from his Account, notwithstanding the fact that the Enterprise's Website was fraudulent, as described herein.

30.     These deceptive acts inflicted actual damages (in the amount described herein) on Leyva preventing him from withdrawing funds he had accumulated and imposing oppressive, arbitrary, capricious and extortionary fines on same.

## Count III – Unfair Trade Practices
### [FTC Act Section 5 ("FTCA")]

31.     Leyva incorporates by reference all the allegations set forth in ¶¶1-20 as if fully set forth herein.

32.     Here the Enterprise undisputedly caused substantial harm to Leyva under the FTCA.

33.     The harm could not have been reasonably avoided because the Enterprise had stolen the logo and brand of ICE, the owner of the NYSE and other exchanges across the world, including Singapore. The Enterprise claimed that it was part of ICE's Singapore Division and was owned by ICE.

34.     The Enterprise's understood it was operating a fraudulent Website and took it down as soon as ICE became aware of the Enterprise's fraudulent online presence. It also knew that it was never part of ICE whatsoever.

## Count IV –Control of Racketeering Enterprise
### [Civil RICO, 18 U.S.C. § 1961 et seq.]

35.     Leyva incorporates by reference all the allegations set forth in ¶¶1-20 as if fully set forth herein.

36.     The Enterprise maintained an illegal revenue stream by inducing consumers to send funds to its Website, funds that would never be returned.

37    The Enterprise committed over thirty (30) RICO predicated acts through its agents and Website, as described herein. These predicate acts were all committed within the timeframe that the RICO Act ("the Act") requires.

38.    The Enterprise's fraudulent misrepresentations and extortion constituted a pattern of related racketeering activity that the Act requires. This pattern of activity was carried out by the Enterprise's agents and Website, and likely by other DOES yet to be named.

39.    The Enterprise collected its illegal revenue, by having it agents convince unsuspecting consumers to send funds to the Enterprise's Website, with the allure that said consumers would be trained on the Website's usage and instructed as to what trades to make and when to make them.

40.    Defendant BAS and its agents and shareholders profited directly from the Enterprise's racketeering activity, being core to the Enterprise's revenue generation scheme.

## PRAYER FOR RELIEF

WHEREFORE, Leyva respectfully request that this Court:

### <u>Count I – Fraudulent Misrepresentation</u>

(A)    Award Leyva all actual damages suffered, including direct, consequential, and incidental damages, based on the Enterprise's fraudulent misrepresentation, in an amount to be proven at trial.

(B)    Award Leyva pre-judgment interest on all damages awarded pursuant to (A) above.

(C)    Grant Leyva any other and further relief as this Court deems just and proper.

## Count II – Texas Deceptive Trade Practices Act ("DTPA")

(A)    Award Leyva all actual damages suffered, including direct, consequential, and incidental damages, based on its deceptive trade practices, in an amount to be proven at trial.

(B)    Award Leyva pre-judgment interest on all damages awarded pursuant to (A) above.

(C)    Award Leyva attorneys' fees as contemplated under the DTPA.

(D)    Grant Leyva any other and further relief as this Court deems just and proper.

## Count III – Deceptive Trade Practices Act ("FTC Act")

(A)    Award Leyva all actual damages suffered, including direct, consequential, and incidental damages, based on its deceptive trade practices, in an amount to be proven at trial.

(B)    Award Leyva pre-judgment interest on all damages awarded pursuant to (A) above.

(C)    Award Leyva attorneys' fees as contemplated under the FTC Act.

(D)    Grant Leyva any other and further relief as this Court deems just and

proper.

### Count IV – Participation in an Enterprise Racketeering Scheme ("RICO Act")

(A)    Permanently enjoin the Enterprise and all other persons in active concert or participation with the Enterprise, as authorized by 18 U.S.C. § 1964(a), from continuing to engage in activities proscribed by 18 U.S.C. § 1962(b).

(B) Award Leyva direct, consequential, and incidental damages sustained to his business and property flowing from Enterprise's violation of 18 U.S.C. § 1962(b), in an amount to be proven at trial.

(C) Award Leyva threefold the damages proven in (B) above as authorized by 18 U.S.C. § 1964(c).

(D) Award Leyva the costs of this suit as authorized by 18 U.S.C. § 1964(c).

(E) Award Leyva reasonable attorneys' fees as authorized by 18 U.S.C. § 1964(c).

(F) Grant Leyva any other and further relief as this Court deems just and proper.

## JURY DEMAND

Leyva requests a trial by jury on all issues for which they are entitled to a trial by jury.

## DESIGNATION OF PLACE OF TRIAL

Leyva hereby designates Austin, Texas as the place of trial for the above styled matter.

Respectfully submitted,

By: /s Carlos A. Leyva
Carlos A. Leyva
7744 Northcross Dr.
Austin, Texas 78747
(727) 744-8683 phone
cleyva@digitalbusinesslawgroup.com

**PRO SE ATTORNEY FOR
PLAINTIFF**

14